Daniels, J.
The action was brought to recover the possession of forty-four cases of leaf tobacco, sold by the plaintiffs to the defendant on the 4th of November, 1885. The sheriff took possession of thirty-nine cases of tobacco under the requisition and other papers issued in the action for that purpose, but failed to obtain possession of the remaining five cases. Upon affidavits made for that purpose, an order of arrest was made under subdivision 1 of section 550 of the Code of Civil Procedure, for the arrest of the defendant, on the ground that these cases had been concealed, removed, or disposed of so that they could not be found, and with the intent that they should not be found or taken, or to deprive the plaintiffs of the benefit thereof. This subdivision of the Code has provided for the arrest of the defendant when the fact may be established that the Oerty has been concealed, removed, or disposed of. so it cannot be found, either with the intent that it should not be found or taken, or with the intent to deprive the plaintiffs of the benefit thereof. Upon either of these in *208 tents being established, in the disposition, removal or concealment of the property, an order of arrest may be obtained in the action to arrest, and hold the defendant to-bail for the value of such property. Barnett v Selling, 9 Hun, 236; 70 N. Y., 492; Thompson v. Strauss, 29 Hun, 256.
The points, therefore, to be determined are, whether the-affidavits establish the right of the plaintiffs to maintain the action for the recovery of the cases of the tobacco, and whether these five cases had been disposed of, concealed, or removed, with intent to deprive them of the benefit of that-part of the property.
It has not been affirmed that any false representations, were made by the defendant to the plaintiffs to induce them to sell and deliver the tobacco to him; but it has been alleged that at the time when the purchase was made he was, in fact, insolvent, and obtained the property without-any expectation of paying its purchase price, or intending; not to pay for it to the plaintiffs. That he was insolvent at the time when the purchase was made has been established to a reasonable degree of certainty by the affidavit-of the defendant’s book-keeper, who stated that his books-then showed him to have a stock on hand worth about seven thousand dollars, and bills and accounts owing to him to the amount of three thousand two hundred dollars-more. This made his total available assets, if his debts were all collectable, not to exceed the sum of ten thousand two hundred dollars, while his liabilities appeared to amount, to about the sum of eighteen thousand dollars, not including five thousand dollars for which he confessed a judgment to his wife, on or about the 28th of December, 1885, for moneys stated to have been loaned to him by her previous to the middle of September, the time at which his book-keeper stated this to be the condition of his affairs. Upon these affidavits, as well as the condition in which Ms-financial affairs were found to be when Ms property was levied upon and sold under this and another judgment confessed by Mm, when it is stated that the amount of Ms-indebtedness exceeded his assets in the sum of about twenty-seven thousand dollars, there can be no room for doubt that he was in an insolvent condition when he purchased the tobacco in controversy. But whether he had, in fact, purchased it, expecting or intending not to pay for it, is a fact not established in the same manner, by direct testimony;, neither was it necessary that it should be so established to-entitle the plaintiffs to maintain their actions for the recovery of the possession of the property, or to obtain an order of arrest for the possession of the tobacco not returned to them. That may be, and ordinarily must be, established when the fact can be proved by circumstances; and to *209 establish it in this manner the law requires proof of facts leading directly to the conclusion that a fraudulent intent existed at the time when the purchase of the property was made. And when the facts are such as clearly to prove the existence of this intent, then the vendor is entitled to rescind, the sale and maintain an action for the recovery of the possession of the property. Schufeldt v. Schintzler, 21 Hun, 462.
Where the legal principle is stated to be, “that a debtor who is hopelessly insolvent, and knows that he cannot pay his debts, and that he must fail in business and thus disappoint his creditors, cannot honestly take advantage of a credit induced by Ms apparent prosperity, and thus obtain property wMch he has every reason to believe he can never pay for.”
“The necessary result of a purchase under such circumstances will be to cheat and defraud the vendor, and the-•intention to cheat may properly be found, therefore, by the jury in an action of this character.” Id., 464, 465.
The defendant is stated in one of the affidavits to have been a retail dealer in leaf tobacco at 253 on the Bowery. The affiant then added: “His busmess has been to sell leaf tobacco in quantities less than a bale, or case, to small manufacturers of cigars.” His bookkeeper also stated Mm to be “a small dealer in leaf tobacco.” Another affiantcharacterized Ms business m the same manner, addmg that he sold “goods in small quantities to small manufacturers of cigars;” and the amount of capital mvested m Ms busmess tended to confirm the truth of this description of it. In the fall of the year 1885, beginning with the last day of September and endmg with the 10th of December, he made large-purchases of tobacco. These purchases exceeded m amount-the sum of $30,000, wMch were much more than the business carried on by Mm required.
That is stated by Ms bookkeeper, as well as another person who had been in his employment as being very unusual and extraordinary for Mm; and it was shown by these and other affidavits that during the same time he was engaged in seffing tobacco m large quantities, and so far as the prices for wMch the sales were made have been stated, at less than the tobacco had been purchased for by him. A large part of Ms sales were made to one mdividual who seems to have been interested with others in disposing of the property bought by Mm, and out of wMch a considerable profit was realized, and divided between Mmself and these other persons. What the defendant seems to have been especially engaged in with the tobacco bought by Mm, which was purchased upon credit, was to dispose of it in such a manner- *210 as to reaEze its proceeds, although probably less in aU instances than the amount for which the tobacco had been ■bought by him. While this business was being carried on by him, and before the time when he made purchases and .sales in this manner, he was obtaining notes from his bookkeeper, and another person who was in his employment, which he procured to be discounted by the Germania Bank. These notes are stated to have been obtained and received by him with the express intention of obtaining the discounts .upon them as business paper. His bookkeper stated that he was informed by the defendant that he had told the bank ■that the bookkeeper who made the notes was a tobacco .merchant. And after receiving a considerable amount of .this paper, the bank was disposed to make inquiries concerning the business and responsibiEty of the bookkeeper, who was requested by the defendant but refused to confirm -the truth of his representation. The notes of his salesman and porter were in Eke manner obtained for use. And in the latter part of November, 1885, the bookkeeper states that he informed the defendant that he was a bankrupt, -and the latter requested him not to say anything about the fact to any person. He is also stated in the affidavit of .Aaron J. Bach to have represented to him on the 30th of September, 1885, when he appEed to his firm to purchase -thirty-two cases of leaf tobacco from them that he was worth more than $5,000; that he was doing weH in his business, and that he contemplated enlarging it and going into .the wholesale business. He is also stated in the affidavit of ■George E. Moulton to have represented to the Mercantile Agency in the month of June that he was owing about -$6,900, and had fuUy $14,000 stock and outstandings, to -cover his indebtedness, and on the 10th of the fofiowing December, that he made a further statement that he was worth over $10,000 net at the time when he made this representation.
At the time when he made this last representation, and -that made to Bach, he was, according to the statement of his book-keeper, so largely insolvent as to exclude the possibility of his being able for any long period to proceed with the transaction of his business. In fact, his fafiure at that time appeared to be directly impending, and it was probably by the purchases which he made, and the proceeds reaEzed from the sales of 'the tobacco purchased, that this result was for the time being avoided. As his business was smaE, it is reasonable to conclude that the state of his financial affairs must have been known to himself; and that when he represented to Bach, on the 30th of September, that he was worth more than five thousand doEars, he knew the representation to be false.
*211 It is true that this representation was not made to the .plaintiffs in this action; but it is a fact which they had the .right to prove as evidence of the intent with which he was .actuated when the purchase in controversy was made. The manner in which he obtained the notes of the two persons who were in his employment, and procured them to be discounted, and the request made to his book-keeper to confirm the representation made concerning his business condition, also sustains the conclusion that his intent in making his purchases during the fall of 1885 was fraudulent. The large amount of the pinchases which were made, and the manner in which the property was disposed -of', also support the same conclusion.
Indeed, the facts are of such a description as to leave •scarcely any ground for possible doubt that in purchasing the tobacco he obtained it with the expectation and intention on his own part of defrauding the vendors out of portions of the purchase price, and the extraordinary manner, as well as the prices for which he made sales of the tobacco, are indications of the purpose on his part to place the property beyond the reach of his creditors. Other circumstances not, however, of so decisive a character, are also sustained in the case, indicating that the -defendant in purchasing and selling the tobacco was influenced by a design to defraud his creditors.
Three other cases were argued with the one which has "now been considered. In that of Bear and another against the same defendant, the tobacco was purchased on the 16th of October, 1885; in that of Miranels and another against the same defendant, it was purchased on the 19th of October, 1885, and in that of Newgass against the same defendant, the purchase was on the 20th of ° November, 1885.
In all other material respects the cases are the same. The same affidavits have been produced, and the same facts are relied upon in support of the alleged fraudulent intention, inducing the purchase of the property by the defendant, and the subsequent disposition which he made •of portions of it. The affidavits in each of the cases are .such as to leave no reasonable grounds of doubt concerning the right of the plaintiff in the actions to the orders of arrest which the defendant has moved to set aside, and the •appeals in each of the four cases are entirely unsustained. The orders from which they have beemtaken should be affirmed with ten dollars costs together with the disbursements.
I concur, Beady, J.